We'll hear the next case, Johnson v. Schmidt. Good morning, your honors. I'd like to reserve two minutes for rebuttal. May it please the court, my name is Josephine Miller, and I am here representing the appellant in this case, Cleveland Johnson, in his suit against his former employer, which was the Department of Children and Families, as well as two individuals. Importantly, Mr. Johnson came to work for DCF, which is the Child Protective Services Agency in Connecticut, as a result of filing a complaint of discrimination with the Connecticut Commission on Human Rights and Opportunities. He came to work in July of 2010, and very shortly thereafter experienced a number of occasions where individuals in the training academy made complaints with regard to his performance. I want to say first of all that the fact that Mr. Johnson came to work as a result of this complaint is not the starting point that this court should look at in terms of the retaliation claim that he has alleged. He's alleged both retaliation as well as race discrimination. This court has said in one case that opportunities to retaliate don't always happen immediately, and we believe that that is what happened in this instance. He was brought to work as a result of this complaint of discrimination, but then what we see is a very strong temporal proximity to additional complaints that Mr. Johnson made after he became employed. Very strong. In November of . . . Sorry, I'm missing something. What was it that led to his coming? You said . . . He filed a complaint with the Connecticut Commission on Human Rights and Opportunities . . . While he was working for the . . . No, before he was ever employed, he filed a complaint of discrimination. He was seeking to become employed as a social worker trainee, and they disqualified him initially. So it was based on his failure to get a job at this agency. That's correct. That was the basis for the original charge. They then conceded that they had violated the law and essentially brought him to work under a settlement. But once he did become employed, what we see is them beginning to create a paper trail for the purposes of finding a basis for terminating him. In November of 2010, approximately four months after Reverend Johnson was employed, he was given a written statement with regard to the assessment of his performance to that date. And notably, not a single word was said with regard to any client complaints or any real complaints about his performance. And that is important for this Court to notice, because later on, after Mr. Johnson files a new complaint of discrimination, within less than four weeks' time, we see them retroactively making claims that his performance was not up to par. What is the evidence in the record that race was a motivating factor? It is our position that there was a statement made by the area director, Malcolm Blue, who was one of the named individuals, to the effect that Mr. Johnson had gone to him to complain that he thought that he was about to be set up once again for adverse employment action. And according to Reverend Johnson, Mr. Blue stated to him, are you threatening me? And he used the term, boy. Now, I know that the trial court disallowed that latter portion of the statement. Without suggesting what weight, if any, to give to it, I understand that the person who said that, Mr. Blue, was also a person of color. That's correct. But I would point this Court to the decision of the United States Supreme Court in the case called Oncale v. Sundowner Systems, where the Court says you cannot categorically presume that just because a person is of the same race, that they will not discriminate based upon race. But the word boy was left out of the answers to the interrogatories, and it only was put in later on. What is the explanation for the discrepancy? The position of the plaintiff is this, that those interrogatories were an initial statement of the facts as he understood them to be, and that he expected that upon further discovery, namely his deposition being taken, that there would be an amplification of what was said in the interrogatories. That's a pretty significant omission from the interrogatory answers, wouldn't you say? I would not say that there is any direct contradiction. And we've cited for the Court some case law to that effect, that there was not a direct contradiction, but that the later statement was an amplification of what was earlier said. I think the Court needs . . . Does it go to the weight? It goes to the weight of the evidence. I think what . . . It's a statement that casts the whole exchange in a discriminatory light, in your view. I mean, it's . . . Well, I think that we have . . . You have a tough argument, I think, with a fact finder. We need to have a focus on the fact that we have both a discrimination complaint and a retaliation complaint. The Court should keep in mind that this context of the statement coming from the Director, Area Director, who ultimately signed the termination letter was not an isolated comment because it went specifically to Mr. Johnson engaging in protected activity. He had specifically gone to the manager to say, hey, this social worker, Charlotta Smith, who is named as a defendant, was creating a false claim against Mr. Johnson. And she basically said to him, I could get you in trouble because what she sought to do was have one of his clients make a complaint against him to say that she wanted to be removed from his caseload. So what we have is Mr. . . . This is on summary judgment, yes? That's correct. What was the evidence to support what you just said about the . . . The evidence was the testimony of Mr. Johnson himself that the client came to him and notified him that she had been threatened with having a neglect petition substantiated against her if she did not accede to this request that she seek to be removed from Mr. Johnson's caseload. So what we have . . . She testified that she was asked or told to do this. I'm sorry, I didn't hear you. She testified, or however she got it in, she testified that she was, in fact, told to make that statement. No, we did not have the client testify, obviously for confidentiality reasons. I mean, the woman who sent the notice of what you're complaining, the client, she was told to send it, is that right? My client testified that that is what his client stated to him regarding the co-worker, that she was being asked to request to be taken . . . She did not herself testify to that? No, no. And in fact, the evidence redacts her name. Isn't that hearsay? What she told . . . your client stating what she told him. It is. However, what's important for the court to note is that Mr. Johnson, once receiving this information and finding out that there was, in fact, a substantiation of the claim against the client, went to Mr. Blue and said, I feel like I'm being set up for termination. It's in this text that he said to Mr. Blue, because I feel that I'm being set up, I'm going to probably have to file a new complaint of discrimination against the agency. That is when Mr. Blue said to him, are you threatening me? Obviously displaying hostility and animus towards Reverend Johnson for participating in protected activity. He had every right to make this claim. The retaliation part of the claim. That's the retaliation part of the claim. And it is our position that the retaliation claim is actually the far more significant claim made. It's important for this court to note, I think, that as admitted by the defendants in their brief, client complaints were the most significant part of why they say that Reverend Johnson received poor ratings. But what we have to look at is that in the very first evaluation that he received, November 30th of 2010, not a single word was made known to him. Nothing was said to him. Nothing was in that written document to say anything about client complaints. It was not until after he filed the new CHRO complaint alleging that he was being set up that we then have the March 31st memo of concerns coming from Mr. Blue and Mr. Hoffman saying that there were all these client complaints out there. But you've had discovery and there were client complaints. Well, we deny that there were those complaints. I thought you denied the basis for the complaints, not that there were such complaints. Well, we believe that there— Clients, I gather, agreed that they had made these complaints. Is there something else that you're arguing? Well, we believe that there is sufficient basis for a jury to determine that the allegedly contemporaneous supervisor notes about this host of complaints is something that reasonable jurors could question the validity of them. I may not be being clear. I thought in discovery some of these clients substantiated that they did indeed file complaints, Not clients, no. We had the agency, through the training supervisor, who was Mr. Johnson's immediate supervisor, she testified that there were contemporaneous supervision notes. Yes, I saw that. I saw that. But didn't you have an opportunity to depose the clients? No, not— You could have. Well, no, the problem is the confidentiality of these individuals. Your client knew who he'd supervised and who'd complained about him. No, my client didn't supervise it. Well, he had people on his caseload— Well, I mean, who he'd spoken to and was complaining about how he had dealt with them. Okay. I think, Your Honor, that for confidentiality purposes, there would have been objections, and I would understand them, to us then deposing clients who are— Try. Beg your pardon? Try to depose clients? Not in this instance, because I know, based upon past experience, that there would be that kind of objection. But the problem is you're left with a record where there's no admissible evidence that the complaints were urged by the defendant, and that's your claim of retaliation. No, I would disagree with that, Your Honor, because we do have Ms. Smid, who we believe was acting as an agent of the employer, who came to my client with regard to, for example, this individual who she was said to have requested to make a complaint about Mr. Johnson. But it was pointed out— She said, I can make trouble for you. —that he had got hearsay problems. Beg your pardon? He had got hearsay problems. No, but the issue is this. You have the social worker saying, I can make trouble for you over this whole instance. You then have Mr. Johnson going to higher management saying, I believe I'm being set up. And then he gets threatened with further action, adverse action against him when you have Mr. Blue saying, are you threatening me simply because Mr. Johnson said, I think I'm going to have to file a new discrimination complaint? You're well over your time. Let's hear from the other side, and then you'll have rebuttal. May it please the Court, my name is Assistant Attorney General Jennifer Bennett, and I represent the defendants in this matter, the Department of Children and Families, Charlotte Smid, and Malcolm Blue. Your Honors, this Court should affirm the District Court's decision granting summary judgment to the defendants for the following reasons. The District Court properly granted summary judgment as to the plaintiff's discrimination claims under Title VII and against the individual defendants under Section 1981 as enforced through Section 1983 because the plaintiff failed to present any evidence giving rise to an inference of discrimination. Nor did the plaintiff provide sufficient evidence to establish that DCF's actions were not due to his deficient performance. The plaintiff failed to present evidence to refute DCF's legitimate, non-discriminatory reasons for all actions taken with regards to him. Second, the District Court properly granted summary judgment as to the retaliation claims for the same reasons. The plaintiff, again, failed to present any admissible evidence giving rise to an inference of retaliation to support a prima facie case, and he also failed to present evidence demonstrating that DCF's legitimate, non-discriminatory reasons were a pretext for retaliation or that retaliation was the but-for cause for the Department's actions. Just to address a few of the points that were raised by my colleague, the District Court correctly concluded that it should not consider the addition in the plaintiff's affidavit of the word boy to the statement that was made, allegedly made, by Mr. Blue. The plaintiff was specifically asked in the interrogatories what was said to him, and it's in the appendix. In quotations, he quoted, are you threatening me, quote, unquote. The District Court correctly concluded that any attempts to modify or add to that testimony by way of an affidavit after the close of evidence and the close discovery was not proper and did not consider that comment. Even if the... I understand that you cannot contradict a statement you've made under oath in these circumstances, but I'm not sure about amplification. Why isn't this properly considered, and then with the recognition that you'd be able to try to impeach on the grounds that it wasn't disclosed at the time of the interrogatory? I'm not sure you can preclude it, can you, any more than if the witness had gotten on the stand and said it for the first time on the stand? Well, Your Honor, I think that the District Court, relying on case law from this court, that factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial. And I think that's important for the court to be consistent with and to recognize. Otherwise, it really defeats the purpose of specific pointed questions that are asked in an interrogatory under oath when the plaintiff answers the statement. We have to reach this. I mean, I understand the District Court thought this took the case out at the prima facie stage. But if I understood your argument, you think that if the case were to go to the third step of McDonnell-Douglas, it would fail at that level just as the retaliation claim fails at that level, right? Correct, Your Honor. Even if this court were to determine that he gets past the prima facie case, there is no evidence in the record to support that anything that was done was pretext to rebut the legitimate nondiscriminatory reasons. Even if the court did consider that one comment, there is case law and stray remarks as far as whether the actions taken, and this goes to the retaliation claim, the actions taken about the client complaints, those had been in progress well before the second CHRO complaint was filed. The contemporaneous supervision notes of the plaintiff's supervisor, Ms. Kerbrall, were very detailed and showed that she spent a lot of time, and these are in the record, a lot of time meeting with him and recording the client complaints and contemporaneously keeping notes of all of these meetings, which date, I think, even prior to the first memo he received in November of 2011. I also just want to correct one comment that was made by my opposing counsel, that the original CHRO complaint that was filed, I believe my colleague stated that DCF conceded that it violated the law, DCF in no way conceded that. At that point in time, it was a settlement agreement whereby DCF denied any liability or that it had broken any laws, and it was, as standard settlement agreement language normally goes, just to settle the complaint and move on from that. So I just wanted to correct that statement. As the record is clear, the plaintiff did not provide any admissible evidence to support either a prima facie case of discrimination or retaliation or to rebut the defendant's legitimate nondiscriminatory reasons for the actions that it took with regards to his employment. If there are no further questions, I will cede the rest of my time. Thank you. We'll hear the rebuttal. It is our position that the court has to look very carefully at the chronology of events after the plaintiff became employed. We have him being evaluated four months in, at which time not a word was said in that written evaluation with regard to client complaints, which is the centerpiece of why defendants say that they rated him poorly and ultimately terminated him. We then have defendants . . . There is evidence in the record of the existence of client complaints. True? Well, let me just talk about that. One of the complaints was one where Mr. Johnson went to a client's home for purposes of case management and . . . There was evidence of other complaints as well, right? There was evidence after the fact. Is there evidence in the record to raise a genuine issue of fact as to the existence of multiple client complaints? We believe that there is. What is that evidence? Given the fact that this false complaint was solicited by one individual, the fact that one of the alleged complaints had to do with . . . But to the evidence that that was solicited is a hearsay statement. But there is . . . You're asking for your admissible evidence that raises a question of fact. We also have the fact that the immediate supervisor of Mr. Johnson, only after the fact, after the CHRO complaint was filed, and indeed after we were in litigation, then said, there are all these supervision notes. One has to question the credibility of that supervisor when that information was never conveyed to Mr. Johnson while he was being evaluated. You also have the fact that some of the alleged complaints are the kind of matters that no social worker trainee could avoid. For example, there was one instance where Mr. Johnson went to a client's home and was threatened physically with assault. The person had a weapon. He had to be removed from that case. And a referral made to the police. How could that be . . . Was he a trainee at that point? He was a trainee. But how could that in good conscience be considered a client complaint when he was physically threatened to the point that they had to call in the police? Those kinds of matters, we believe, a reasonable juror could question the credibility of why the defendant would use such matters as a basis for termination, especially in the context that those allegations came within just a few weeks of him having filed a new complaint of discrimination. Thank you. Thank you. Rule of reserve decision. The last case is on submission. Accordingly, I'll ask the clerk to adjourn.